IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SCOTT K.,

                         Plaintiff,

            v.                                              Civil Action No.
                                                            8:23-CV-090 (DEP)

MARTIN J, O'MALLEY,
Commissioner of Social Security,[1]


                         Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER & PALCSIK            MARK SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         JASON P. PECK, ESQ.
6401 Security Boulevard
Baltimore, MD 21235

_____

[1]      Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on August 15, 2024, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by

---

[2]     This action is timely, and the Commissioner does not argue otherwise.   It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.   Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reference, it is hereby

ORDERED, as follows:

1)     Plaintiff's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)     The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)     The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.


David E. Peebles
U.S. Magistrate Judge


Dated:     September 3, 2024
           Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
SCOTT KING

                         Plaintiff,

vs.                             Civil Action No. 8:23cv090

MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

-------------------------------------------x



        Transcript of a Decision from a Teleconference

Hearing held on August 15, 2024, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.



                A P P E A R A N C E S


For Plaintiff:       SCHNEIDER & PALCSIK
                     57 Court Street
                     Plattsburgh, New York 12901
                       BY:  MARK A. SCHNEIDER, ESQ.


For Defendant:       SOCIAL SECURITY ADMINISTRATION
                     OFFICE OF GENERAL COUNSEL
                     6401 Security Boulevard
                     Baltimore, Maryland 21235
                       BY:  JASON P. PECK, ESQ.


                Lisa M. Mazzei, RPR
          Official United States Court Reporter
                   10 Broad Street
              Utica, New York  13501
                   (315) 266-1176
```

2

1          (The following is an excerpt of a

2            teleconference hearing held on 8/15/2024.)

3          THE COURT:  All right.  Fine.  Thank you.  Let me

4    just run through the background real quickly of this case.

5          Plaintiff was born in February of 1968.  He is

6    currently 56 years of age, lives in Ellenburg Depot with his

7    mother.  He stands 5-foot-7 inches in height, weighs

8    168 pounds.

9          The evidence is a little equivocal as to his

10   educational background.  He testified, and there was a

11   statement that he ended his high school days in 10th grade

12   where he was in regular classes.  That's at 322 and 65 of the

13   administrative transcript.  There is also evidence he

14   received an IEP diploma and was in special ed classes.

15   That's at 79 and 1228.  He is right-handed.  He does not

16   drive, due to seizures and blackouts, as well as undergoing

17   multiple motor vehicle accidents.

18         Plaintiff worked as a hospital food service worker

19   for 27 years.  It's a little equivocal as to when he last

20   worked.  At one point it was suggested May of 2020, and

21   another October 29, 2020.  In any event, he has not worked

22   since.

23         Plaintiff suffers from Type 1 diabetes, seizure

24   disorder, and generalized idiopathic epilepsy from undergoing

25   a childhood bout with meningitis.  He has foot issues, vision

1    issues.  He was hospitalized in November of 2019, in the

2    emergency room for a diabetes-related issue.  He was -- he

3    suffered from diabetic ketoacidosis.

4         Mentally he suffers from variously described

5    conditions.  Adjustment disorder, anxiety, obsessive

6    compulsive disorder.

7         In terms of activities of daily living, plaintiff

8    can dress, bathe, groom, does some meal preparation.  He

9    cleans, he does laundry with his mother.  He shops with his

10   mother or sister, reads, walks, watches television, plays

11   computer games.  He has a hobby of woodworking with a scroll

12   saw and stated at one point he hoped to establish it as a

13   business.

14        Plaintiff applied for Title II benefits.  The

15   application was made in November 1, 2020, alleging an onset

16   date of October 29, 2020, and claiming disability based on

17   seizures, worsening eyesight, and type 1 diabetes.  That's at

18   321.

19        A hearing was initially conducted on October 27,

20   2021, by Mary Sparks, who subsequently retired before issuing

21   a decision.  A second hearing was conducted on April 6, 2022,

22   by Administrative Law Judge Jude Mulvey.  A decision was

23   rendered -- adverse decision, I should say, by ALJ Mulvey on

24   May 4, 2022.  The Appeals Council of the Social Security

25   Administration denied plaintiff's application for review on

4

1    January 11, 2023, and specifically considered subsequently

2    submitted evidence, including school records and a

3    neuropsychological evaluation from Dr. Taher Zandi, finding

4    no basis to overturn the decision based on the new evidence.

5    This action was timely commenced on January 23, 2023.

6            In the decision, Administrative Law Judge Mulvey

7    applied the familiar five-step sequential test for

8    determining disability, finding substantial gainful --

9    counsel, I'm going to ask you to mute your phones, please --

10   finding that he had not engaged in substantial gainful

11   activity since October 29, 2020.

12           At step two, ALJ Mulvey concluded that plaintiff

13   suffers from severe impairments that impose more than minimal

14   limitations on his ability to perform work functions,

15   including diabetes type 1, a seizure disorder, and an

16   adjustment disorder rejecting neuropathy and other related

17   claims concerning plaintiff's feet, rejecting worsening

18   eyesight and hearing loss.

19           The Administrative Law Judge did go through a

20   mental assessment and did note that based on Dr. Hartman's

21   consultative examination, a diagnosis of adjustment disorder

22   that was indicated, and that the various other cognitive

23   neurodevelopmental and related complaints concerning

24   plaintiff's mental capacity and abilities have been

25   considered under that adjustment disorder umbrella and

5

1    specifically noted that all claimant's medically determinable

2    impairments, including those deemed not severe were

3    considered when assessing the claimant's residual functional

4    capacity or RFC.

5           At step three, the ALJ concluded plaintiff's

6    impairments do not meet or medically equal any of the listed

7    presumptively disabling conditions set forth at

8    commissioner's regulations.

9           At step four -- I'm sorry.  First, there is a

10   determination based on the record that plaintiff was capable

11   of performing light work with the following exceptions.  He

12   cannot climb ladders, ropes, or scaffolds; must avoid all

13   exposure to moving mechanical machinery and unprotected

14   heights; cannot drive as a part of job duties; can perform

15   simple, routine and repetitive tasks in a work environment

16   free from fast-paced production requirements and involving

17   only simple, work-related decisions and few, if any,

18   workplace changes; and can tolerate a low level of work

19   pressure defined as work not requiring multitasking, detailed

20   job tasks, significant independent judgment, a production

21   rate pace, sharing of job tasks, or anything more than

22   occasional contact with the public.  Applying this RFC at

23   step four, the Administrative Law Judge concluded plaintiff

24   is incapable of performing his past relevant work as a food

25   service worker, hospital.

6

1              At step five, with the benefit of testimony from a

2    vocational expert, the Administrative Law Judge found that

3    there are positions in the local economy -- in the national

4    economy that plaintiff is capable of performing, including as

5    a silverware wrapper, marking clerk, and routing clerk, and

6    therefore concluded that he was not disabled at the relevant

7    times.

8              As the parties know, the Court's function is

9    limited to determining whether substantial evidence supports

10   the determination and correct legal principles were applied.

11   Obviously, it is a well-established standard and very

12   differential, as the Second Circuit has noted in *Brault vs.*

13   *Social Security Administration Commissioner,* 683 F.3d, 443

14   2012, later reiterated in *Schillo vs. Kijakazi* at 31 F.4th

15   64, Second Circuit 2022.

16             The plaintiff has raised several issues in a very

17   comprehensive, multifaceted challenges outlined in his brief.

18   First he challenges the step two determination and the

19   failure to include cognitive impairments, anxiety and

20   depression as severe impairments.

21             He next argues error in finding plaintiff's

22   disability was caused by noncompliance with prescribed

23   treatment.  He alleges error in discounting plaintiff's

24   subjective reports of symptomology.

25             The fourth ground is alleged error in the

7

1    evaluation of medical opinions.  He also challenges the RFC

2    determination.  He attacks the step five determination and

3    the sufficiency of job numbers testified to by the vocational

4    expert as satisfying the Commissioner's burden at step five

5    and argues that new evidence should have been considered by

6    Social Security Administration Appeals Council, including the

7    neuropsychological evaluation report of June 8, 2022,

8    addressing first step two.

9            Obviously, the claimant must show that he or she

10   has a medically determinable impairment at step two that

11   rises to the level of a severe impairment, 20 CFR

12   404.1520(a)(4)(2).  It does not reach the threshold of

13   severity where it does not significantly limit the claimant's

14   physical or mental ability to do basic work activities.  And

15   of course it is a de minimus requirement intended only to

16   screen out the weakest of cases.  A medically determinable

17   impairment by regulation must be established by objective

18   medical evidence from an acceptable medical source,

19   20 CFR 404.1521.

20           In this case, plaintiff has no history of

21   outpatient mental services.  Dr. Hartman did opine that he

22   suffers from an adjustment disorder, which the Administrative

23   Law Judge did include at step two.  Clearly, there was a

24   statement by Dr. Bret Hartman, the consultative examiner that

25   a mild neurocognitive disorder and a mild autism spectrum

1    disorder should be ruled out.  Those, however, do not

2    constitute diagnoses.

3         Plaintiff argues that there was a duty to order

4    cognitive testing based on Dr. Hartman's opinion, but there

5    was -- Dr. Hartman did not recommend it and plaintiff did not

6    request it.  In fact, the plaintiff's counsel said the record

7    was complete when asked by the Administrative Law Judge.

8         Dr. Taher Zandi, who issued a post-hearing

9    determination report found a developmental disorder of

10   scholastic skills and borderline intelligence.  I am not sure

11   whether that qualifies as a diagnosis, but if it does, it

12   came after the ALJ's determination and therefore has to be

13   analyzed under the new evidence standard, which I will

14   address in a moment.  But I find no error in -- at step two.

15   And, furthermore, if there was error, it is harmless because

16   the Administrative Law Judge proceeded to step three and

17   stated that she considered all of plaintiff's mental

18   impairments even those deemed not severe, and so that

19   suffices to establish harmless error.  *Lorraine H. vs.*

20   *Commissioner of Social Security,* 2022 WL 4545541 from the

21   Northern District of New York, September 29, 2022.

22        In terms of noncompliance, this is an interesting

23   issue.  The Administrative Law Judge noted plaintiff's

24   noncompliance, but it was, as part of a credibility -- what

25   we used to call credibility, part of the analysis of

9

plaintiff's subjective complaints.  It was not in and of
itself relied upon as a basis to deny disability.  There were
three areas of noncompliance cited:  The refusal to take
insulin before rather than after meals.  Plaintiff could not
avoid high sugar snacks.  And he stopped using an InPen
Bluetooth device without explanation.

        The failure to abide by prescribed treatment is a
proper consideration in addressing subjective complaints.
SSR 16-3P provides, quote, we will consider an individual's
attempts to seek medical treatment for symptoms and to follow
treatment once it is prescribed when evaluating while the
symptom intensity and persistence affect the ability to
perform work-related activities for an adult.  It goes on to
state:  If the individual fails to follow prescribed
treatment that might improve symptoms, we may find the
alleged intensity and persistence of an individual's symptoms
are inconsistent with the overall evidence of record.  It's
also consistent with the finding in *Calabrese vs. Astrue,* 358
F. App'x 274, Second Circuit 2009, where when the so-called
back in the day, credibility assessment was addressed by the
Second Circuit, it was noted that plaintiff was noncompliant
in taking the medication that was prescribed by her doctors.

        Plaintiff relies on SSR 18-3p, which addresses
initial denials of claims on this basis.  He argues that the
reason he did not take insulin before rather than after

dinner was he was concerned about hypoglycemic attacks, which the ALJ noted.  She did not, however, address the high sugar snacks and stopping usage of InPen issues.  I find the substantial evidence supports the Administrative Law Judge's reliance on this as one of several factors in evaluating plaintiff's claims.

Which brings me to the evaluation of those claims, so-called credibility.  The assessment of a plaintiff's subjective complaints are -- must be addressed first to whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  And, if so, then the ALJ must evaluate both the intensity and persistence of those symptoms and the extent to which they may limit the claimant's ability to perform work-related activity.

As I indicated before, it's addressed by SSR 16-3p.  When addressing this second prong, the ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and nonmedical sources and must evaluate the intensity, persistence and limiting effects of the claimant's symptoms by considering various relevant factors that are spelled out both in SSR 16-3p and 20 CFR 404.1529(c)(3) i through vi.

And of course the ALJ in this case recited

1   plaintiff's claims at pages 18 to 19 and explained her

2   reasoning for discounting those claims at 19 through 25.  I

3   find that the explanation does provide a basis for meaningful

4   judicial review.  And of course that determination is

5   entitled to considerable deference if supported by

6   substantial evidence.  *Madeline S. v. Commissioner of Social*

7   *Security,* 2022 WL 526233, Northern District of New York

8   January 27, 2022; *Sherry L. v. Kijakazi,* 2022 WL 561563,

9   Northern District of New York, February 24, 2022, and *Aponte*

10  *vs. Secretary of Department of Health and Human Services,* 728

11  F.2d 588, Second Circuit 584.

12          As I indicated before, one, but only one of several

13  factors that were relied on was the failure of plaintiff to

14  follow a prescribed treatment.  There was also reliance on

15  objective findings showing many normal observations despite

16  failure of the plaintiff to follow a prescribed treatment.

17  The denial of neuropathy, plaintiff's activities of daily

18  living, including his woodworking at home, which he hoped to

19  make into a business.  The fact that seizures apparently were

20  controlled well by medications.  An EEG which showed mild

21  results.  An MRI testing which showed only a right occipital

22  lobe lesion, various medical opinions.  The fact that

23  plaintiff had no mental health treatment despite the fact

24  that Dr. Hartman recommended that he do so.

25          The plaintiff argues that it was -- the ALJ should

12

1    have considered plaintiff's good work history.  Step four

2    shows that the ALJ was aware of plaintiff's work history

3    which clearly is one of many factors, but the failure to

4    mention it is not necessarily fatal.  *Wavercak v. Astrue,* 420

5    F. App'x 91, Second Circuit 2011, and *James D. vs.*

6    *Commissioner of Social Security,* 547 F.Supp. 40279, Western

7    District of New York 2021.  In my view, the Administrative

8    Law Judge's determination is supported by substantial

9    evidence and not patently unreasonable.

10          The plaintiff challenges the evaluation of medical

11   opinions in the record.  Because this application was filed

12   in this case after March 27, 2017, evaluation of medical

13   opinion evidence is subject to new regulations under which

14   the ALJ must articulate how persuasive he or she finds the

15   medical opinions and explain how he or she considered the

16   factors of supportability and consistency of those opinions.

17   20 CFR Section 404.1520(c).

18          In this case, the first challenge is Dr. Hartman's

19   report and medical source statement which appears at 1228 to

20   1231 of the record.  In his medical source statement,

21   Dr. Hartman concluded that plaintiff was able to understand,

22   remember and apply simple directions.  He was able to

23   maintain personal hygiene and maintain awareness of hazards.

24   He is able to maintain an ordinary routine, mild difficulty

25   in using reason and judgment, mild to moderate difficulty

13

1    interacting adequately with others, mild to moderate

2    difficulty sustaining concentration, moderate difficulty in

3    understanding, remembering and applying complex directions,

4    and moderate difficulty in regulating emotions.

5            The Administrative Law Judge analyzes and addresses

6    Dr. Hartman's report at several locations in her decision at

7    page 15 and 22 through 24.  The Administrative Law Judge at

8    page 15 found the following:  There is insufficient evidence

9    with which to find a medically determinable learning

10   disorder, neurocognitive disorder or autism spectrum.  Again

11   to establish a medically determinable impairment, medical

12   evidence must establish anatomical, physiological, or

13   psychological abnormalities that can be shown by medically

14   acceptable, clinical and laboratory diagnostic techniques.

15   The record lacks any specific diagnosis of such impairments,

16   including from the claimant's treating neurology records.

17           At page 22 addressing, again, Dr. Hartman, the ALJ

18   noted the following:  I have accepted Dr. Hartman's diagnosis

19   of adjustment disorder with mixed anxiety and depression --

20   depressed mood, only when affording extreme deference to

21   subjective reports and when considering the evidence in the

22   light most favorable to the claimant.  This is despite the

23   claimant's admission that he had no history of any mental

24   health treatment and with his apparent failure to comply with

25   the Dr. Hartman's recommendation that he pursue such

14

1    treatment.

2            It's unclear to me exactly how the plaintiff views

3    this as inconsistent with the Administrative Law Judge's

4    determination.  And, specifically, the RFC determination.

5    It's well-established that moderate limitations in such

6    mental health areas are not inconsistent with simple work.

7    *Porteus v. O'Malley,* 2024, 2180203 from the Northern District

8    of -- I'm sorry, from the Second Circuit 2024.

9            There is also a challenge to Physician's Assistant

10   Daniel Knef, a treating source opinion.  His medical source

11   statement is dated April 19, 2021.  It appears at 1216 to

12   1220 of the administrative transcript.  It is found to be

13   partially persuasive.  The Administrative Law Judge addresses

14   it at 23 to 24 of her decision.  It is persuasive with

15   respect to the physical restrictions, but not persuasive on

16   standing and walking, the need for a brace and the absences.

17   Also, it is persuasive in calling for low stress work.  The

18   Administrative Law Judge's review of the opinion of

19   Physician's Assistant Knef, in my mind, is appropriate and

20   well-explained.

21           There are prior medical administrative findings at

22   1A and 4A that appear to support the residual functional

23   capacity.  They are issued by Dr. Y. Sherer on June 25, 2021,

24   addressing mental capacity, and Dr. J. Rosenthal on May 18,

25   2021, addressing physical capacity.  There is also one from

1    March 25, 2021, from Dr. S. Siddiqui, addressing only the

2    physical capacity.  They were discussed by the Administrative

3    Law Judge.  It is well established that such prior

4    administrative medical findings can supply substantial

5    evidence if they are supported.  *Woytowicz v. Commissioner of*

6    *Social Security,* 2016 WL 6427787 from October 5, 2016,

7    Northern District of New York.  The report and recommendation

8    at that site was subsequently adopted, 2016 WL 6426385

9    October 28, 2016.  They support, for the most part, the

10   Administrative Law Judge's RFC finding.  Although the

11   Administrative Law Judge, while accepting Dr. Sherer and

12   Dr. Hartman's opinions actually imposed greater limitations.

13   Dr. Siddiqui did say at page 109 that the plaintiff may need

14   to be absent because of his medical condition.  That was not

15   included in Dr. Rosenthal's opinion.  In any event, it's

16   not -- it does not qualify as an opinion because it simply

17   says "may."  *Lisa A.S. v. Kijakazi,* 2022 WL 4494189 from the

18   Northern District of New York, September 28, 2022.

19         Dr. Zandi's report, as I alluded to earlier, was

20   not before the Administrative Law Judge.  It is therefore

21   subject to the analysis under the standard for after acquired

22   or new evidence.  The Social Security regulations do

23   authorize the claimant to submit new and material evidence to

24   the Appeals Council when requesting review of an ALJ's

25   decision.  20 CFR 404.970(b).  In order to merit the review

1    of the decision by the Appeals Council, the additional

2    evidence must be new material and related to the period on or

3    before the date of the hearing decision and also must show a

4    reasonable probability that such additional evidence would

5    change the outcome of the decision.  In this case, the Social

6    Security Administration Appeals Council considered this

7    additional evidence and stated, quote, we find this evidence

8    did not show a reasonable probability that it would change

9    the outcome of the decision.  This is at page 2 of the

10   administrative transcript.

11         Clearly, the opinion of Dr. Zandi shows that

12   plaintiff cannot perform complex tasks, but this is not

13   inconsistent with the RFC.  I agree that it is close enough

14   in time to relate to the period in question coming only one

15   month after the ALJ's decision, but I also agree with the

16   Appeals Council that there is no reasonable probability that

17   would change the outcome.  I note that there is no

18   requirement the Appeals Council elaborate on the substance

19   and consideration of after-acquired evidence.  In this case,

20   I do not believe that it would undercut the ALJ's decision.

21         The next argument is that the RFC is not supported.

22   An RFC assessment represents a finding of a range of tasks a

23   claimant is capable of performing, not withstanding the

24   impairments at issue, and this means a claimant's maximum

25   ability to perform sustained work activities in an ordinary

17

1    setting on a regular and continuing basis, meaning eight

2    hours a day for five days a week, or an equivalent schedule.

3    *Tankisi v. Commissioner of Social Security,* 521 F. App'x 29,

4    Second Circuit 2013, 20 CFR Section 404.1545(a).  It is the

5    burden, of course, on the plaintiff to show any limitations

6    that would impose more than limitations that appear in the

7    RFC.  In my view, the plaintiff is requesting a reweighing on

8    the evidence, including the medical opinions.  In this case,

9    the ALJ specifically stated she considered all of the

10   plaintiff's impairments, including neuropathy.  The RFC is

11   supported by Dr. Siddiqui, Dr. Sherer, Dr. Rosenthal, and not

12   undercut by Dr. Wilson, Zandi, or Physician's Assistant Knef.

13          Regarding absences, Dr. Sherer opined to

14   plaintiff's ability to work within a schedule, maintain

15   attendance, and does not significantly limit it in this

16   regard.  That's at 128.  There is also a statement that

17   plaintiff can maintain a regular schedule.  That's at 131.  I

18   don't find that plaintiff carried his burden to show greater

19   limitations.

20          The next argument is concerning step five.  The

21   step five determination was based on any testimony --

22   testimony from a vocational expert, which is, of course, the

23   proper means of fulfilling an agency's burden at step five of

24   the disability test.  *Bapp v. Bowen,* 802 F.2d 601, Second

25   Circuit 1986.

18

1          In this case, there was -- the vocational expert
2     testified to three specific jobs that plaintiff is capable of
3     performing that exists in sufficient numbers in the national
4     regional economy, including silverware wrapper, marketing
5     clerk, and routing clerk.  Plaintiff argues that plaintiff is
6     incapable of performing level two reasoning jobs.  Level two
7     requires the plaintiff to apply commonsense understanding to
8     carry out detailed, but uninvolved written or oral
9     instructions.  They must be able to deal with problems
10     involving a few concrete variables in or from standardized
11     situations.
12          And the problem with this argument, of course, is
13     that for 27 years, plaintiff performed in a position,
14     hospital food service worker, that was actually a reasoning
15     level three position, which required him to apply commonsense
16     understanding to carry out instructions furnished in written,
17     oral, or diagramming form, and to deal with problems
18     involving several concrete variables in or from standardized
19     situations.
20          As plaintiff argues, a person's IQ remains
21     relatively stable throughout his or her adult life.  And in
22     this case, the fact that plaintiff was able to perform in a
23     level three position for 27 years undermines this argument.
24          In any event, I have found that the residual
25     functional capacity in this case was supported and it's

1   consistent with a level two reasoning position.   *Timothy M.*

2   *v. Kijakazi,* 2021 WL 4307445, Northern District of New York

3   2021.

4           In terms of the number of jobs, the regulations

5   state the following:  We consider that work exists in the

6   national economy when it exists in sufficient numbers either

7   in the region where you live or in several other regions of

8   the country.  It does not matter whether work exists in the

9   immediate area in which you live.  That's 20 CFR Section

10   404.1566.

11           In this district, it is well established that

12   anything over 9,000 jobs suffices to meet the Commissioner's

13   burden.  *Kelly D. v. Saul,* 2019 WL 6683542 Northern District

14   of New York 2019.  The vocational expert was not asked about

15   regions, but the vocational expert testified to jobs totaling

16   171,199.  And I think from that, it's safe to infer that jobs

17   exist in sufficient numbers in several other regions of the

18   country, and so I don't find any step five error.

19           Which brings us to an interesting issue.  As

20   plaintiff's counsel noted in a submission, which is Docket

21   21, Social Security Administration made an initial level

22   finding of disability with an onset date of October 27, 2020.

23   An explanation of this occurs at page four of the document

24   which provides as follows:

25           While the evidence is sufficient and consistent to

20

1    support the proposed allowance, the onset date has been

2    established as of October 27, 2020.  Evidence shows a prior

3    ALJ denial dated May 4, 2020.  As explained -- and there's a

4    citation -- only the SSA component as the same or a higher

5    adjudicative level may reopen an administratively final

6    determination or decision.  And it found that there were no

7    exceptions and therefore the earliest possible onset date is

8    May 5, 2022, the day after the ALJ's decision.

9            This determination is apparently based on a mental

10   RFC finding in a prior -- in a state prior administrative

11   medical finding prepared by the Department of Social Services

12   and it finds that the mental RFC justifies an inability to

13   sustain a normal workday/workweek based on plaintiff's

14   inability to sustain even the basic mental demands required

15   for unskilled work.

16           The Commissioner has responded to this in a

17   submission, which appears at Docket 23, stating it is not

18   binding.  In oral argument, however, we had a healthy

19   discussion as to the impact of this on the Administrative Law

20   Judge's decision in this case and the Commissioner's ultimate

21   determination.

22           So while I was prepared to uphold the

23   Commissioner's determination in this case based upon my

24   review of the arguments raised by counsel and the record that

25   was before the Administrative Law Judge, and considering the

21

1    newly-acquired evidence that was before the Appeals Council,

2    in my view, given this determination, which relates to the

3    period at issue and is clearly inconsistent, I believe that

4    the Commissioner's determination should be vacated and the

5    matter remanded.  I don't find persuasive evidence of

6    disability at this point.  Although I think that ultimately

7    that will be the result based on this finding that he has

8    recently submitted, but -- and I understand

9    Attorney Schneider's argument that reveals the time and that

10   there shouldn't be any undue delay.  But nonetheless, I think

11   that caution warrants that the matter be remanded without a

12   directed finding of disability.

13          So I will issue an order to that effect under

14   sentence four, vacating the Commissioner's determination and

15   remanding the matter for further consideration based upon

16   this decision, which will be transcribed and attached to the

17   order.  And I appreciate counsels' excellent presentations.

18   I hope you enjoy the rest of your summer.

19               (Court adjourned, 11:58 a.m.)

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3    I, LISA M. MAZZEI, RPR, Official U.S. Court

4    Reporter, in and for the United States District

5    Court for the Northern District of New York, DO

6    HEREBY CERTIFY that pursuant to Section 753, Title

7    28, United States Code, that the foregoing is a true

8    and correct excerpt of transcript of the stenographically

9    reported proceedings held in the above-entitled

10   matter and that the transcript page format is in

11   conformance with the regulations of the Judicial

12   Conference of the United States.

13

14                    Dated this 26th day of August, 2024.

15

16

17                         /S/ LISA M. MAZZEI

18                         LISA M. MAZZEI, RPR
                           Official U.S. Court Reporter
19

20

21

22

23

24

25